UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22754-CIV-SEITZ
MAGISTRATE JUDGE P.A. WHITE

ANTHONY MOORE,                  :

    Plaintiff,              :

v.                              :         REPORT OF
                                          MAGISTRATE JUDGE
WALTER MCNEIL,[1] et al.,        :

    Defendants.             :

_____

## INTRODUCTION

Plaintiff Anthony Moore has filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for compensatory and punitive damages, and for declaratory relief (Amended Complaint, DE#13; see, also, Complaint, DE#1[2]). Plaintiff's claim stems from an incident that occurred while he was incarcerated at Dade Correctional Institution ("DCI"), where he was previously confined (DE#13, pp. 4; see, also, DE#1, p. 1-2). The plaintiff was granted leave to proceed in forma pauperis (DE#4). The cause is before the Court upon Defendant Love's Motion to Dismiss and Motion for Summary Judgement (DE#67).

---

[1] Edwin G. Buss has recently replaced Walter NcNeil as the Secretary of the Florida Department of Corrections.

[2] Pursuant to the Court's Order dated October 16, 2009, Plaintiff's Amended Complaint (styled "Motion to Amend Complaint") is the operative pleading in this case (See, Order, DE#6). However, Plaintiff's original Complaint sheds further light on some aspects of his factual allegations, and so, in keeping with the dictates of Haines v. Kerner, 404 U.S. 519 (1972) that a pro se litigant's pleadings be construed liberally, the Court will refer to the original Complaint as necessary.

1

RELEVANT PROCEDURAL BACKGROUND

Plaintiff's Amended Complaint named eleven defendants. Of those, only Defendant Love has been served with process. Defendant Love has filed a Motion to Dismiss For Failure to Exhaust Administrative Remedies and Motion for Summary Judgment, with exhibits attached in support thereof (DE#67). The Court treated Love's Motion to Dismiss as also being a Motion for Summary Judgment, and issued and Order of instructions advising plaintiff of his rights and obligations with regard to such motions (DE#69). In response, plaintiff filed his own Declaration in Opposition to Motion for Summary Judgment, as well as three documentary exhibits (DE##79, 82).[3] Defendant Love then filed a Reply in further support of his motions (DE#83).

SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff alleges that, sometime in 2002 or 2003, he had a problem with another inmate named Anthony Tedesco while the two were housed at another facility. According to plaintiff, the Department of Corrections ("DOC") should have therefore kept plaintiff separated from Tedesco by means of a "special review."[4] Plaintiff claims that, despite this, in September of 2007 DOC transferred him to DCI, where Tedesco was also housed. Plaintiff alleges that he raised the issue with classifications personnel upon arrival at DCI, but that his complaints were ignored. Plaintiff claims that, as a result, he was then assaulted with a baseball bat by another inmate at Tedesco's instructions while on

---

[3] It is not entirely clear why plaintiff filed the "Attachments of Court's Orders" (DE#82) and so, in an abundance of caution, the Court assumes these were filed in opposition to Defendant Love's motion.

[4] A "special review" is apparently a classification status wherein inmates who pose a threat or risk to security are tracked and housed to minimize potential conflict. See, Rule 33-601.211, F.A.C; see, also, Brunt Aff., (DE#67, Exh. H)(a special review alerts the DOC that issues exist between the inmate and another individual).

the prison yard.  Plaintiff also alleges that there was inadequate supervision and security on the prison yard on the day he was assaulted.  Finally, plaintiff alleges, after the assault, various DOC employees were deliberately indifferent to his serious medical needs, and/or denied him access to medical care in order to cover up the incident (See, generally, DE#13; see, also, DE#1, pp. 4-5).

Plaintiff asserts two claims against Defendant Love; first, that Defendant Love failed to have adequately protect him from the attack and, second, that Defendant Love was deliberately indifferent to plaintiff's serious medical needs (DE#13, ¶5).

With regard to the claim of failure to protect, plaintiff alleges that Defendant Love violated his Eighth Amendment rights by not having adequate security on the prison yard, and for permitting unsupervised access to a baseball bat (DE#13, ¶5; see, also, DE#1, p. 5).  With regard to the claim of deliberate indifference to his serious medical needs, plaintiff alleges that Defendant Love violated his Eighth Amendment right on the day of the incident by preventing him from receiving treatment recommended by medical staff, and by not sending plaintiff to an outside hospital (DE#13, ¶5; see, also, DE#1, p. 5).

## DISCUSSION

### Defendant Love's Motion for Summary Judgment

In his motion for summary judgment, Defendant Love argues that he is entitled to summary judgment on plaintiff's failure-to-protect claim, and that plaintiff has failed to exhaust his administrative remedies with regard to the claim of deliberate indifference to his serious medical needs.[5]

---

[5] As noted in the procedural history, Defendant Love attached exhibits in support of his motion to dismiss for failure to exhaust administrative remedies, and so the Court has treated it as a motion for summary judgment.

*Failure to Protect*

With regard to the failure-to-protect claim, Defendant Love argues that he was not aware of any problems between plaintiff and inmate Tedesco, and that there was sufficient staffing on the prison yard on the day in question (See, DE#67, ¶¶2-5 & pp. 16-17; see, also, DE#67, Exh. C, Love Declaration, ¶6).  According to Defendant Love, these undisputed material facts entitle him to judgment as a matter of law (See, DE#67, pp. 14-16).

It is well settled that the failure of prison officials to control or separate prisoners who endanger the physical safety of other prisoners may, under certain conditions, constitute an Eighth Amendment deprivation; however, the constitutional rights of inmates are not violated every time one inmate is injured as a result of another's actions.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986).  For a prison or jail official to be constitutionally liable for failure to protect the safety of an inmate, the plaintiff must show that the official knew of and recklessly disregarded "an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  Two requirements must therefore be met.  First, the prisoner must be incarcerated under conditions that pose a substantial risk of serious harm.  Farmer, 511 U.S. at 834.  Second, the prison official who know of and ignores such a risk must have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834.  Merely negligent failure to protect an inmate does not create liability under §1983.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)(citations omitted).  Prison officials must have been deliberately indifferent to a known danger before their failure to intervene "offend[s] 'evolving standards of decency,' thereby rising to the level of a constitutional tort." Id.  The Supreme Court has emphasized that Eighth Amendment liability requires a

4

showing that the responsible official was subjectively conscious of risk to the inmate:

> We hold . . . that a prison official cannot be liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.

<u>Farmer</u>, 511 U.S. at 837. Thus, there must be an affirmative causal connection between an official's acts or omissions and any alleged constitutional deprivation. <u>See</u>, <u>Zatler</u>, 802 F.2d at 401.

The facts of this case do not indicate that Defendant Love knew of and recklessly disregarded an excessive risk to plaintiff's safety as required to establish liability under the applicable constitutional standards set forth above.

Defendant Love has worked for DOC since 1997, and was the officer in charge of the relevant unit at DCI on the date of the incident (DE#67, Exh. C, ¶¶1-4). As shift supervisor, his duties included scheduling security staff for the shift he was supervising (DE#67, Exh. C, ¶¶2-4). The DOC has no record of a special review between plaintiff and inmate Tedesco, and Defendant Love was not aware of any problem between plaintiff and inmate Tedesco (DE#67, Exh. C, ¶6; Exh. H, ¶4). Plaintiff never informed Defendant Love that he feared inmate Tedesco or any other inmate, or that he had been threatened in any way (DE#67, Exh. C, ¶6). Had Defendant Love been made aware or had any knowledge that plaintiff was in some kind of danger, he would have taken adequate steps to protect him (DE#67, Exh. C, ¶6).

There is no department policy regarding exactly how many security staff are to be assigned to the recreation yard (DE#67, Exh. C, ¶5; Exh. D, ¶5). The decision regarding how many security staff to assign is based on the discretion of the officer in charge, based on his/her experience and the needs of the institution (DE#67, Exh.

C, ¶5; Exh. D, ¶5). There are many factors to consider, such as the size of the yard, the layout, the number of inmates, the type of recreation, etc... (DE#67, Exh. D, ¶5).

There were thirty three (33) security staff on duty during the relevant shift on the day of the incident (DE#67, Exh. C, ¶4; Exh. D, ¶3). This number is consistent with adequate staffing for the safe and secure operation of the shift as established by the Florida DOC (DE#67, Exh. D, ¶3). The prison recreation yard was open from about 6:20 p.m. to 7:15 p.m. (DE#67, Exh. C, ¶4). In Defendant Love's experience, not all inmates chose to go to the recreation yard after the evening meal (DE#67, Exh. C, ¶4). Some choose to go to other locations such as the canteen or dormitories and, as the officer in charge, Defendant Love must ensure that these locations are adequately staffed as well (DE#67, Exh. C, ¶4; Exh. D, ¶5).

On September 23, 2007, the recreation yard was staffed with two experienced sergeants and one officer (DE#67, Exh. C, ¶5; Exh. D, ¶4). In addition, there was an officer assigned to a tower that overlooks the recreational yard (DE#67, Exh. C, ¶5; Exh. D, ¶4). The assignment of two (2) sergeants to this duty promotes the security of the recreational yard due to their increased level of experience, and the assignment of the officer in the tower provides additional scrutiny and a better view (DE#67, Exh. C, ¶5; Exh. D, ¶4). All officers have radios in case help is needed, and the institution has two (2) special response teams that can be called in case of an emergency (DE#67, Exh. C, ¶5). Based on his experience and the various security factors to be considered, Defendant Love felt that the three security staff on the recreation yard and the officer in the tower were sufficient to adequately staff the yard on the day of the incident (DE#67, Exh. C, ¶5).

Plaintiff has failed to rebut the foregoing. The record thus reflects that there is no genuine issue of material fact, and that

Defendant Love is entitled to judgment as a matter of law.[6] See, Farmer, 511 U.S. at 837 (§1983 liability attaches only if the prison official know of and disregards an excessive risk to the inmate's health or safety); Brown, 894 F.2d at 1537 (mere

---

[6]Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex, 477 U.S. at 322. Pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson v. Liberty Lobby, Inc., supra).

negligence is insufficient; prison officials must be deliberately indifferent to a know danger for §1983 liability to attach).[7]

*Deliberate Indifference to Serious Medical Needs*

With regard to plaintiff's claim of deliberate indifference to his serious medical needs, Defendant Love argues that none of plaintiff's grievances made any claim that he or any other security staff interfered with his medical care (See, DE#67, ¶¶10-19 & pp. 10-12). According to Defendant Love, this alleged failure rendered plaintiff's grievances insufficient to put DOC on notice of the claim as required by the Prison Litigation Reform Act of 1995 ("PLRA")(DE#67, pp. 10-12).

The PLRA significantly altered a prisoner's right to bring civil actions in forma pauperis, and placed new restrictions on a prisoner's ability to seek federal redress concerning the conditions of his confinement, and provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

---

[7]As Defendant Love correctly notes, the fact that there is no evidence that a constitutional violation occurred also means that he is necessarily entitled to qualified immunity with regard to this claim (DE#67, pp. 19-20). As Defendant Love further correctly notes, to the extent that plaintiff may be attempting to impose liability upon him for alleged failures by the assigned security staff, §1983 liability attaches to a supervisor only if the supervisor personally participated in the events, or if there is a causal connection between the actions of the supervisor and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)(citations omitted). Finally, to the extent that plaintiff may be attempting to sue Defendant Love in his official capacity, Defendant Love is also correct that the Eleventh Amendment bars any such suit (DE#67, pp. 17-18)

The Courts have held that satisfaction of the PLRA exhaustion requirement serves as a threshold issue, since the statutory mandate requires a prisoner to have fully exhausted the administrative remedies/processes which are available to him or her, <u>before</u> bringing suit on a claim in federal court, regardless of the form of relief that the administrative process makes available. <u>See</u>, <u>Booth v. Churner</u>, 532 U.S. 731, 736-41 (2001); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998). The requirement applies to all prisoner suits filed after the date on which the PLRA became effective (April 26, 1996), <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2003), and to virtually all federal claims brought by prisoners. <u>Porter v. Nussle</u>, 534, U.S. 516, 532 (2002). It applies to inmates in both state and federal custody. <u>Alexander</u>, 159 F.3d at 1325.

The current exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to a grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. <u>Porter</u>, 534 U.S. at 516-17. In other instances, the internal review may filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. <u>Id</u>. at 517; <u>see</u>, <u>also</u>, <u>Alexander</u>, 159 F.3d at 1327 (outlining policies favoring exhaustion[8]).

After enactment of the PLRA, the courts have been faced with deciding what amount of information an inmate must include in administrative grievances in order to satisfy the exhaustion

---

[8]Those policies are: (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." <u>Alexander</u>, 159 F.3d at 1327 (citations omitted).

requirement. The decisions in this regard hinge primarily on two factors: 1) what information was known by or available to the inmate when seeking relief via administrative grievances; and 2) the need to provide notice to prison officials of what the prisoner is complaining of so that they may have an opportunity to marshal facts for a response, and possibly correct the problem. Accordingly, an inmate's failure to name a corrections official, or to specify the facts or nature of his claim in his grievance, may be fatal to a later civil rights claim. See, Johnson v. Johnson, 385 F.3d 503, 518 (5th Cir. 2004)(race-based claim unexhausted where prisoner's grievance included only enough facts to put prison officials on notice of claim based on sexual orientation); Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001)(prisoners' failure to name in administrative grievance second officer who allegedly failed to intervene in assault rendered claim unexhausted(citing Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999)("the importance of using the prison grievance process [is] to alert prison officials to problems"); Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000)(holding that each of the policies favoring exhaustion is furthered by requiring that a prisoner "provide with his grievance all relevant information reasonably available to him," and explicitly distinguishing cases where "a prisoner cannot provide that which he does not have"); Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000)(inmate must exhaust administrative remedies as to all claims prior to filing suit in federal court); Hartsfield v. Vidor, 199 F.3d 305, 308-09 (6th Cir. 1999)(claims unexhausted where plaintiff knew identities of defendants who allegedly committed unconstitutional acts, but failed to name them in pre-suit grievances); Goldsmith v. White, 357 F.Supp.2d 1336, 1338-40 (N.D. Fla. 2005)(claim unexhausted where inmate failed to mention in his grievance specific facts regarding his sexual orientation and that officer used bigoted reference when depriving him of contact lenses); Wilson v. Taylor, 2002 WL 950062 at *2-*4 (N.D. Fla. 2002)(4 claims relating to religious practices raised in grievances exhausted, but others also relating to religious practices not raised in grievances unexhausted). The requirement that an inmate provide in his administrative grievances all relevant information

reasonably available to him logically requires that the essence of the claim be clearly stated if the policies underlying the exhaustion requirements are to be given meaningful effect. See, Jones v. Bock, 549 U.S. 199, 219 (2007)(the primary purpose of a grievance is to alert prison officials to the problem).

Here, plaintiff's claim of deliberate indifference by Defendant Love is very specific: that, on the day of the incident, Defendant Love directly intervened to prevent plaintiff from receiving adequate medical treatment from nurses Chandilier and Chamberlain in order to cover up the allegedly inadequate security that led to the incident, and that he prevented him from being sent to an outside hospital (DE#13, ¶5; see, also, DE#1, pp. 4-5).[9] Plaintiff's grievances do not contain any hint of such a claim.

Around October 17, 2007, plaintiff submitted formal grievance log #0710-402-044 (DE#67, Exh. G-1). This grievance is generally directed against DCI security and medical staff, and briefly describes the alleged September 23, 2007 assault.

On or about October 31, 2007, plaintiff submitted formal grievance log #0711-402-003 (DE#67, Exh. G-3). This grievance was also generally directed against DCI's security and medical staff, and again described the assault. In this grievance, plaintiff went on to allege that "there was no officer around on the recreation yard to prevent this violent action from happening." He further alleged that, despite his complaints of serious injury on the day of the incident, medical staff told security that plaintiff was well enough to go back to the compound. Plaintiff also stated that, after being examined by medical staff, he "then spoke to the O.I.C. Captain Love and filled out a witness statement . . . and I asked to be placed in protective custody." Plaintiff asserted that he then "signed up for sick call and was ignored and had to ask for medical emergency just to be seen and treated." Finally, plaintiff made allegations regarding his eventual admission to Larkin

---

[9] Plaintiff alleges that the nurses who attended to him on the day of the incident "conducted little review" of his injuries and "recklessly dismissed" him after speaking with Defendant Love, who told the nurses, "there's nothing wrong with him," "hurry up," in order "to cover this whole incident up" (Complaint, DE#1, p. 5).

11

Hospital, and stated that "someone is trying to cover it up in the administration computer."

On or about November 21, 2007, plaintiff submitted an informal grievance to the medical department (DE#67, Exh. G-2). In this grievance, plaintiff alleged that medical staff did not take his injuries seriously and were deliberately indifferent to his medical needs on the day of the incident, and that he was then kept in protective-custody confinement "for days in pain and declaring medical attention for several emergencies" before finally being seen by a physician at Larkin Hospital.

On or about November 28, 2007, plaintiff filed an amendment to grievance log #0711-402-003, which was assigned grievance log #0711-282-148 (DE#67, Exh. G-4). The only new factual allegations plaintiff made in this amendment were that another officer handcuffed him in a brutal manner and with excessive force, in deliberate disregard of his injuries, immediately following the incident.

On or about December 26, 2007, plaintiff submitted grievance appeal log #08-6-00365 regarding the September 23, 2007 incident and his subsequent treatment (DE#67, Exh. 8, G-5). Plaintiff did not make any new allegations in this appeal.

On or about January 13, 2008, while housed at Tomoka Correctional Institution ("TCI"),[10] plaintiff submitted "emergency grievance" log #0801-282-079 (DE#67, Exh. 8, G-6). This grievance generally alleged that medical staff were being deliberately indifferent to his serious medical needs.

On or about January 30, 2008, plaintiff submitted grievance appeal log #08-6-04103 regarding the September 23, 2007 incident and his subsequent treatment (DE#67, Exh. G-7). The only new factual allegations that plaintiff made in this appeal were that his administrative grievances had been intentionally mishandled as part of an alleged cover up, that he was being retaliated against and that there was a conspiracy against him.

---

[10]Plaintiff was transferred to TCI on October 25, 2007(DE#67, Exh. B).

12

On or about February 6, 2008, plaintiff submitted grievance appeal log #08-6-04287 regarding the September 23, 2007 incident and his subsequent treatment (DE#67, Exh. G-8). Plaintiff did not make any new allegations in this appeal.

On or about July 16, 2009, Plaintiff submitted an informal grievance to the Warden based on "newly discovered evidence" (DE#67, Exh. G-9). In this grievance plaintiff essentially claimed that a special review with inmate Tedesco had been discarded, and that this led to him being attacked when he was transferred to DCI.

On or about August 2, 2009, plaintiff submitted a formal grievance log #0908-401-036 (DE#67, Exh. G-10). In this grievance, plaintiff reiterated his claim that the special review with inmate Tedesco was ignored, and that this contributed to the alleged assault on September 23, 2007.

On or about August 24, 2009, plaintiff submitted grievance appeal log #09-6-27244 regarding the allegedly discarded special review (DE#67, Exh. G-11). Plaintiff did not make any new allegations in this appeal.

The record thus reflects that plaintiff failed raise his claim of deliberate indifference by Defendant Love in his administrative grievances, despite having all the relevant information available to him at the time. Plaintiff was well aware of Defendant Love's identity and the facts in support of his claim at the time that he filed his grievances, yet plaintiff failed to allege anything about Defendant Love preventing him from receiving adequate medical care or being taken to an outside hospital on the day of the incident. Indeed, plaintiff's October 31, 2007 grievance, wherein he specifically names Defendant Love and details the nature of his claims, would lead one to conclude that his complaints of deliberate indifference were directed to only medical staff, whereas his issue with Defendant Love and security was that "there was no officer around on the recreation yard to prevent this violent action from happening" (DE#67, Exh. G-3). Beyond that, plaintiff's general allegations of a "cover up" or conspiracy are simply insufficient to put anyone on notice that he was alleging that Defendant Love deliberately interfered with his medical treatment on September 23, 2007. Rather, these allegations would

lead one to conclude that plaintiff was alleging a cover up by administrative officials subsequent to the incident (DE#67, Exh. G-3, G-7). As such, plaintiff has failed to exhaust his administrative remedies with regard to this claim against Defendant Love. See, Jones, 549 U.S. at 219 (primary purpose of grievance is to alert prison officials to a problem); Brown, 212 F.3d at 1205 (prisoner must provide in his administrative grievance as much relevant information about his claims as he reasonably can provide); Alexander, 159 F.3d at 1327 (outlining policies favoring exhaustion); Graves, 218 F.3d at 885 (administrative remedies must be exhausted as to all claims); Goldsmith, 357 F.Supp.2d at 1338-40 (specific facts regarding claim must be included).

## CONCLUSION

Based upon the foregoing, it is recommended that Defendant Love's Motion to Dismiss (construed as a motion for summary judgment) and Motion for Summary Judgment be GRANTED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 2nd day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Anthony Moore, pro se
    DC#899246
    Union Correctional Institution
    7819 N.W. 228th Street
    Raiford, Florida 32026

    LaDawana Murphy, AAG
    Office of the Attorney General
    The Capitol, Suite PL-01
    Tallahassee, Florida 32399-10