UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22754-CIV-SEITZ
MAGISTRATE JUDGE P. A. WHITE

ANTHONY L. MOORE,　　　　　　　　　　:

　　　　Plaintiff,　　　　　　　　　　:

v.　　　　　　　　　　　　　　　　　　:　　　　REPORT OF
　　　　　　　　　　　　　　　　　　　　　　　MAGISTRATE JUDGE
　　　　　　　　　　　　　　　　　　　:　　　　　(DE# 334)

WALTER MCNEIL, ET AL.,

　　　　　　　　　　　　　　　　　　　:

　　　　Defendants.

_____

## I.　Introduction

Plaintiff Anthony Moore has filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for compensatory and punitive damages, and for declaratory relief (DE# 13, Amended Complaint). Plaintiff's claim stems from an incident that occurred while he was incarcerated at Dade Correctional Institution ("DCI"), where he was previously confined (DE# 13, p. 4; DE# 1, p. 1-2). The plaintiff was granted leave to proceed in forma pauperis (DE# 4). The cause is before the Court upon a motion for summary judgment filed by defendant Chamberlain. (DE# 334).

## II.　FACTUAL AND PROCEDURAL BACKGROUND

In the amended complaint, Plaintiff Moore alleged the following. Sometime in 2002 or 2003, he had a problem with another inmate named Anthony Tedesco while the two were housed at another facility. According to plaintiff, the Department of Corrections ("DOC") should have therefore kept plaintiff separated from Tedesco by means of a "special review." However, in September of 2007 the DOC transferred him to DCI, where Tedesco was also housed. He raised the issue with classifications personnel upon

arrival at DCI, but his complaints were ignored. On September 23, 2007, he was assaulted with a baseball bat by another inmate at Tedesco's instructions while on the prison yard. There was inadequate supervision and security on the prison yard on the day he was assaulted. After the assault, defendants Albury and Greene took him to see medical personnel. Although he could hardly stand after the attack, Albury handcuffed him and violently pulled him to the infirmary, inflicting additional harm on the plaintiff. Nurse Chamberlain refused to give adequate medical treatment in order to cover up a violent attack. She conducted little review of his injuries and "recklessly dismissed" him. Finally, she denied him treatment by an outside doctor.

A preliminary report recommended  The case remain pending against Nurse Chamberlain for denial of medical treatment. (DE# 21). The District Court adopted this recommendation. (DE# 85).

Defendant Barry Chamberlain has filed a motion for summary judgment, with exhibits attached in support thereof (DE# 334). Chamberlain argues that Moore failed to exhaust his administrative remedies and there are no genuine issues of material fact relating to whether Chamberlain was deliberately indifferent to his medical needs under the circumstances. Chamberlain had a single encounter with him on September 23, 2007, during which Chamberlain provided him adequate care. (Id.). This court issued and order of instructions advising plaintiff concerning a response to the summary judgment motion. (DE#335). Moore filed responses in opposition to the motion for summary judgment. (DE# 341, 352).

### III.   Exhaustion of Administrative Remedies

2

According to Defendant Chamberlain, none of plaintiff's grievances made any claim that Nurse Chamberlain was deliberately indifferent to Moore's serious medical needs. (DE# 334, p. 14-17). This alleged failure rendered plaintiff's grievances insufficient to put DOC on notice of the claims as required by the Prison Litigation Reform Act of 1995 ("PLRA"). (Id.).

The PLRA significantly altered a prisoner's right to bring civil actions in forma pauperis, and placed new restrictions on a prisoner's ability to seek federal redress concerning the conditions of his confinement, and provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

The Courts have held that satisfaction of the PLRA exhaustion requirement serves as a threshold issue, since the statutory mandate requires a prisoner to have fully exhausted the administrative remedies/processes which are available to him or her, before bringing suit on a claim in federal court, regardless of the form of relief that the administrative process makes available. See, Booth v. Churner, 532 U.S. 731, 736-41 (2001); Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). The requirement applies to all prisoner suits filed after the date on which the PLRA became effective (April 26, 1996), Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2003), and to virtually all federal claims brought by prisoners. Porter v. Nussle, 534, U.S. 516, 532 (2002). It applies

to inmates in both state and federal custody. <u>Alexander</u>, 159 F.3d at 1325.

The current exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to a grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. <u>Porter</u>, 534 U.S. at 516-17. In other instances, the internal review may filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. <u>Id</u>. at 517; <u>see</u>, <u>also</u>, <u>Alexander</u>, 159 F.3d at 1327 (outlining policies favoring exhaustion[1]).

After enactment of the PLRA, the courts have been faced with deciding what amount of information an inmate must include in administrative grievances in order to satisfy the exhaustion requirement. The decisions in this regard hinge primarily on two factors: 1) what information was known by or available to the inmate when seeking relief via administrative grievances; and 2) the need to provide notice to prison officials of what the prisoner is complaining of so that they may have an opportunity to marshal facts for a response, and possibly correct the problem. Accordingly, an inmate's failure to name a corrections official, or

---

[1]Those policies are: (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." <u>Alexander</u>, 159 F.3d at 1327 (citations omitted).

to specify the facts or nature of his claim in his grievance, may be fatal to a later civil rights claim. See, Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000)(holding that each of the policies favoring exhaustion is furthered by requiring that a prisoner "provide with his grievance all relevant information reasonably available to him," and explicitly distinguishing cases where "a prisoner cannot provide that which he does not have"); Johnson v. Johnson, 385 F.3d 503, 518 (5th Cir. 2004)(race-based claim unexhausted where prisoner's grievance included only enough facts to put prison officials on notice of claim based on sexual orientation); Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001)(prisoners' failure to name in administrative grievance second officer who allegedly failed to intervene in assault rendered claim unexhausted(citing Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999)("the importance of using the prison grievance process [is] to alert prison officials to problems"); Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000)(inmate must exhaust administrative remedies as to all claims prior to filing suit in federal court); Hartsfield v. Vidor, 199 F.3d 305, 308-09 (6th Cir. 1999)(claims unexhausted where plaintiff knew identities of defendants who allegedly committed unconstitutional acts, but failed to name them in pre-suit grievances); Goldsmith v. White, 357 F.Supp.2d 1336, 1338-40 (N.D. Fla. 2005)(claim unexhausted where inmate failed to mention in his grievance specific facts regarding his sexual orientation and that officer used bigoted reference when depriving him of contact lenses); Wilson v. Taylor, 2002 WL 950062 at *2-*4 (N.D. Fla. 2002)(4 claims relating to religious practices raised in grievances exhausted, but others also relating to religious practices not raised in grievances unexhausted).

The requirement that an inmate provide in his administrative grievances all relevant information reasonably available to him

5

logically requires that the essence of the claim be clearly stated if the policies underlying the exhaustion requirements are to be given meaningful effect. See, Jones v. Bock, 549 U.S. 199, 219 (2007)(the primary purpose of a grievance is to alert prison officials to the problem).

The inmate grievance procedure for Florida Inmates, as published in the Florida Administrative Code ("F.A.C.") at §33-103, "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrongs." Johnson v. Meadows, 418 F.3d 1152, 1155 (11 Cir. 2005). The rules provide first for an inmate to file an Informal Grievance, see F.A.C. §33-103.005(1), and thereafter, if dissatisfied with the response, to file a formal grievance at the institution, see: F.A.C. §33-103.006. In the event that the inmate feels the grievance was not satisfactorily resolved during the formal grievance procedure, he may file a Request for Administrative Remedy or Appeal to the Office of the Secretary [Bureau of Inmate Grievance Appeals]. See F.A.C. §33-103.007; Chandler v. Crosby, 379 F.3d 1278, 1288 (11 Cir. 2004).

Under certain circumstances, the inmate may bypass the filing of an informal grievance, and proceed directly to the filing of a formal grievance. (This includes instances of emergency, reprisal, or medical concerns).[2] F.A.C. § 33-103.005. Pursuant to §33-103.011, when an informal grievance was not first filed, a formal grievance must be received no later than fifteen calendar days from the date on which the incident about which the grievance

---

[2] For example, as provided under F.A.C. §33-103.005, when the inmate is filing an emergency grievance, or a grievance of reprisal, the informal grievance may be skipped, and the inmate may proceed directly with the filing of a formal grievance, which is thereafter to be followed by an Appeal to the DOC Central Office in Tallahassee.

6

deals occurred.[3]  Thereafter, if the formal grievance at the institutional level is properly filed, and denied, the inmate must file an Appeal at the DOC Central Office in Tallahassee. F.A.C. §33-103.007.

Here, the defendant attached to the motion for summary judgment, copies of all of Moore's grievances regarding the injury he sustained on September 23, 2007. (DE# 334, Ex. B). The defendant argues that the grievances show that Moore failed to exhaust his administrative remedies. (DE# 334). In his response in opposition to the motion for summary judgment, Moore counters that these same grievances establish that he properly exhausted his administrative remedies. (DE# 341, 352).

On October 17, 2007, plaintiff submitted formal grievance log #0710-402-044 wherein he asserted the following:

> I am filing this formal grievance complaint against Dade C.I. security and the medical staff about the incident that occurred September 23, 2007 concerning me, Anthony Moore #898246, of being assaulted with a baseball bat by my roommate that was housed in H1-220L, whom name (sic) I think is Jermain Preston. Upon going to the recreation on 3rd yard and while I was standing under the first pavilion, Inmate Preston walked up behind me and hit me in the back of my head with a baseball bat. I hit the concrete unconscious face first and was hit in the head, back, legs, arms, ribs repeatedly til I came to conscious by these blows.

(DE# 334, Ex. B, p. 1). The January 2, 2008 denial of the grievance provided in pertinent part:

---

[3] "When determining the time frames for grievances in all cases, the specified time frame shall commence on the day following the date of the incident or response to the grievance at the previous level. For example, if an incident occurred on December 1, fifteen days from that date would be December 16." F.A.C. §33-103.011.

7

> The nurse that assisted you was no longer present but with the assistance of other medical staff without violating HIPPA procedures, advised that you were seen on September 23, 2007 at approximately 7:00pm, by Nurse Chamberlain. Nurse Chamberlain advised that you were indeed struck by something but it was not a bat. She advised that the marks on your body were brought upon by some type of altercation. According to your medical file, you were taken to Larkin Hospital where several tests were conducted and due to the time-frame of these tests, you were admitted.

(Id.:2).

On January 23, 2008, Moore appealed the January 2, 2008 denial in log #08604103. He alleged a lack of protection by DCI security officials to prevent the incident. (Id.:17). He again alleged that Nurse Chandelier and other nurses did not examine his injuries and were deliberately indifferent to his medical needs. (Id.). He accused DCI, TCI, and SFRC officials of retaliation due to his previously filed grievances. (Id.:18). Moore made no mention of Nurse Chamberlain. The denial was affirmed with the following:

> Your administrative appeal has been reviewed and exhausted. The response that you received at the institutional level in log #0710-402-044 has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office Level.
>
> Inmate Grievance procedure states "each grievance must address only one issue or complaint." Your current request for administrative appeal addresses more than one issue and/or complaint.
>
> When filing a grievance/appeal, provide all pertinent documentation such as official forms, continuation sheets, responses and attachments.
>
> Furthermore you are advised that it is not within an inmate's scope of responsibility or authority to recommend disciplinary action regarding staff.

> You have not provided sufficient evidence to prove retaliation or that staff has acted inappropriately.
>
> Your administrative appeal is denied.

(Id.:20).

On October 31, 2007, plaintiff submitted formal grievance log #0711-402-003. (Id.:4). This grievance again described the assault. In this grievance, plaintiff went on to allege that "there was no officer around on the recreation yard to prevent this violent action from happening." He further alleged that, despite his complaints of serious injury on the day of the incident, medical staff told security that plaintiff was well enough to go back to the compound. Plaintiff also stated that, after being examined by medical staff, he "then spoke to the O.I.C. Captain Love and filled out a witness statement . . . and I asked to be placed in protective custody." Plaintiff asserted that he then "signed up for sick call and was ignored and had to ask for medical emergency just to be seen and treated." Finally, plaintiff made allegations regarding his eventual admission to Larkin Hospital, and stated that "someone is trying to cover it up in the administration computer." Moore makes no mention of Chamberlain. (Id.). Pursuant to F.A.C. §33-103.014(1)(q), the grievance was returned to Moore without further processing because the grievance presented the same issue as grievance log 710-402-044. (Id.:8).

On November 28, 2007, plaintiff filed an amendment to his October 31, 2007 grievance #0711-402-003, which was assigned grievance log #0711-282-148. (Id.:9). Moore filed the grievance against DCI security and medical staff for the failure to protect him from the incident. (Id.). Moore did not mention Defendant Chamberlain by name, but referred to Nurse Chandelier and other nurses. (Id.). The response provided: "Your grievance is being

returned without a response pursuant to Chapter 33-103.014(1)(r) because you have filed an amendment to a grievance which has already been accepted by SFRC (log #711-402-003)." (Id.:11). On December 26, 2007, plaintiff submitted grievance appeal log #08-6-00365 wherein he reiterated the allegations contained in grievance log #0711-282-148, but did not mention Nurse Chamberlain. (Id.:12). The denial provided:

> The subject of your grievance is currently being reviewed by the investigative section of the Office of Inspector General. A copy of your complaint will be forwarded to that section to be included as a part of their current review. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
> This appeal is not considered an amendment.
>
> Furthermore, you are advised that it is not within an inmate's scope of responsibility or authority to recommend disciplinary action regarding staff. Your complaint was addressed and responded to, any further action will be at the discretion of the administrative staff.
>
> If you feel you need medical attention, contact the institutional medical department via the sick call/emergency process.

(Id.:14)

On January 13, 2008, while housed at Tomoka Correctional Institution ("TCI"), plaintiff submitted "emergency grievance" log #0801-282-079. (Id.:15). This grievance generally alleged that medical staff were being deliberately indifferent to his serious medical needs. (Id.). He made no claims against Chamberlain. (Id.). The formal grievance was denied as it was not a valid emergency grievance and Moore was reminded that he did receive medical care, including treatment from an orthopedic specialist. (Id.:16). On February 6, 2008, plaintiff submitted grievance

10

appeal log #08-6-04287 regarding the denial of his emergency grievance #0801-282-079 (Id.:21). Plaintiff did not make any new allegations in this appeal. His appeal was denied and the response noted that it was the responsibility of the Chief Health Officer to determine the appropriate treatment for Moore's condition and that sick call was available if Moore continued to have problems. (Id.:22).

On August 2, 2009, plaintiff submitted a formal grievance log #0908-401-036 (Id.:25). In this grievance, plaintiff reiterated his claim that the special review with inmate Tedesco was ignored, and that this contributed to the alleged assault on September 23, 2007. He made no mention of Chamberlain. (Id.). His grievance was denied. (Id.:26). On August 24, 2009, plaintiff submitted grievance appeal log #09-6-27244 regarding the allegedly discarded special review (Id.:27). Plaintiff did not make any new allegations in this appeal. His appeal was denied. (Id.).

The record thus reflects that plaintiff failed raise the deliberate medical indifference claim against Chamberlain in his administrative grievances, despite having all the relevant information available to him as early as January 2, 2008, when prison officials identified her in the denial of his first grievance. See F.A.C. §§ 33-103.006, 33-103.011. In his original grievance he did not mention that Nurse Chamberlain provided substandard care. The grievance was focused on the attack, rather than the medical treatment subsequent thereto. In the response rejecting the grievance, the prison officials noted that Nurse Chamberlain treated Moore on September 23, 2007. The plaintiff appealed the denial, which was affirmed because Moore failed to comply with the grievance procedure which stated "each grievance must address only one issue or complaint." Moore's appeal addressed

more than one issue. Assuming Moore properly raised his complaints regarding Nurse Chamberlain in original grievance, which he did not do, the appeal did not exhaust his administrative remedies because he did not comply with applicable procedures. Moore continued to file grievances, however, he never mentioned Nurse Chamberlain, even though he had known of her identity since January 2, 2008.

Review of the grievances reveals that Moore has failed to exhaust his administrative remedies with regard to his claims against Defendant Chamberlain. See, Jones, 549 U.S. at 219 (primary purpose of grievance is to alert prison officials to a problem); Brown, 212 F.3d at 1205 (prisoner must provide in his administrative grievance as much relevant information about his claims as he reasonably can provide); Alexander, 159 F.3d at 1327 (outlining policies favoring exhaustion); Graves, 218 F.3d at 885 (administrative remedies must be exhausted as to all claims); Goldsmith, 357 F.Supp.2d at 1338-40 (specific facts regarding claim must be included). As a result, summary judgment in favor of Defendant Chamberlain is appropriate.

## IV. Conclusion

Based upon the foregoing, it is recommended that the Defendant's Motion for Summary Judgment (DE#334) be GRANTED; that Defendant Chamberlain be dismissed from these proceedings.

Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.

See 28 U.S.C. §636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).

It is so recommended at Miami, Florida, this 22nd day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Anthony L. Moore
    898246
    Santa Rosa Correctional Institution Annex
    Inmate Mail/Parcels
    5850 East Milton Road
    Milton, FL 32583

    Alexandria Elisse Williams
    Department of Corrections
    501 S. Calhoun Street
    Tallahassee, FL 32399
    (850) 717-3605
    Fax: (850) 922-4355
    Email: alexandria.walters@myfloridalegal.com

    Ana C. Francolin
    Hamilton Miller & Birthisel LLP
    100 S Ashley Drive
    Suite 1210
    Tampa, FL 33602
    407-4730-3535
    Fax: 407-730-3540
    Email: afrancolin@cmlawfirm.com

    Daniel Sidney Liebowitz
    Cruser & Mitchell, LLP
    200 E. Robinson Street
    Suite 1140
    Orlando, FL 32801
    407-730-3535
    Fax: 407-730-3540

Email: dliebowitz@cmlawfirm.com